DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COLLEGE OF EASTERN IDAHO;<br>COLLEGE OF EASTERN IDAHO BOARD<br>OF TRUSTEES; KATHLEEN NELSON;<br>CLINT READING; LORI BARBER; VICKI<br>NIELSON;  HAILEY HOLLAND;<br>MICHAEL WALKER; CHRIS SMOUT; and<br>RICK AMAN,<br><br>Defendants. | Case No.<br><br>**COMPLAINT AND DEMAND FOR<br>JURY TRIAL**<br><br>Filing Fee: $402.00 |

COMES NOW Plaintiff, John Doe, by and through his counsel of record, Casperson Ulrich Dustin PLLC, and for cause of action against Defendants College of Eastern Idaho, College of Eastern Idaho Board of Trustee, Kathleen Nelson, Clint Reading, Lori Barber, Hailey Holland, Vicki Nielson, Michael Walker, Chris Smout, and Rick Aman, alleges and complains as follows:

### THE NATURE OF THIS ACTION

1.     This case arises out of the actions taken and procedures employed by Defendants

concerning false allegations made against Plaintiff and his disability status, asserting he posed a threat to himself or others. Even after Plaintiff successfully defended against the charges, the same biased decision makers expelled Plaintiff from the Nursing Program, twice, without due process, after Plaintiff had completed all or substantially all of the requirements for his degree.

2.     Plaintiff John Doe seeks relief against Defendants following Plaintiff's expulsion from the Nursing Program based on false allegations of being a threat, Defendant's ongoing and often expressed bias against Plaintiff due to his disabilities and perceived notions of impairment, and Defendants' failure to provide Constitutionally required due process, violating both Plaintiff's liberty interest and his property interest.

3.     Defendants' actions violated Plaintiff's rights under federal laws, the U.S. Constitution, and state laws.

4.     Defendants' violations of law have derailed Plaintiff's education, tarnished his reputation, and permanently damaged his future career and educational prospects.

5.     Plaintiff files herewith a motion for leave to identify Plaintiff using a pseudonym.

## JURISDICTION AND VENUE

6.     This is an action brought under the Rehabilitation Act of 1973, 29 U.S.C. § 701; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et. seq.*; 42 U.S.C. § 1983, and the laws of the state of Idaho.

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1343, and 1367; as well as 42 U.S.C. § 12117; and 42 U.S.C. § 1983.

8.     Venue in this action properly lies in the United States District Court for the District of Idaho, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

## **PARTIES**

9.     Plaintiff John Doe ("Plaintiff") is a male citizen and resident of the United States of America, who resides in Idaho and was a student at the College of Eastern Idaho ("CEI") near completion of his degree in the Nursing Program.

10.    Defendant CEI is a community college established in Bonneville County with its campus in Bonneville County, Idaho.

11.    CEI is a public entity and receives state and federal financial appropriations, along with money from the taxing district in Bonneville County to fund it and charging the counties where students reside if they reside outside of Bonneville County.

12.    Defendant CEI Board of Trustees ("Trustees") is a five-member board elected from various areas of Bonneville County.  Trustees are responsible for making new rules and regulations to govern CEI.

13.    The election of these Trustees is prescribed by Idaho Code § 33-2106.

14.    Defendant Rick Aman ("Aman") is a resident of the State of Idaho and was the President of CEI during all relevant times described in the Complaint. Aman was selected by the Trustees and serves under its direction.  Aman is sued in his individual capacity, in his official capacity, and as an agent for CEI.

15.    The Trustees, and Aman as the Trustees' administrative hand during the period in question, are responsible for ensuring that all CEI employees are properly trained and supervised to perform their jobs, including providing students their Constitutional and legal rights.

16.    Defendant Kathleen Nelson ("Nelson") is a resident of Bonneville County and was the Director of the Nursing program at CEI during all relevant times described in the

Complaint. Nelson is sued in her individual capacity, in her official capacity, and as an agent for CEI.

17. Defendant Clint Reading ("Reading") is a resident of the State of Idaho and was the Dean of Healthcare and Human Services at CEI during all relevant times described in the Complaint. Reading is sued in his individual capacity, in his official capacity, and as an agent for CEI.

18. Defendant Lori Barber ("Barber") is a resident of the State of Idaho and was CEI's Vice President during all relevant times described in the Complaint. Barber is sued in her individual capacity, in her official capacity, and as an agent for CEI.

19. Defendant Vicki Nielson ("Nielson") is a resident of the State of Idaho and was CEI's Clinical Coordinator during all relevant times described in the Complaint. Nielson is sued in her individual capacity, in her official capacity, and as an agent for CEI.

20. Defendant Hailey Holland ("Holland") is a resident of Bonneville County and was a counselor in CEI's Counseling Center during all relevant times described in the Complaint. Holland is sued in her individual capacity, in her official capacity, and as an agent for CEI.

21. Defendant Michael Walker ("Walker") is a resident of the State of Idaho and was CEI's Dean of Student Affairs during all relevant times described in the Complaint. Walker is sued in his individual capacity, in his official capacity, and as an agent for CEI.

22. Defendant Chris Smout ("Smout") is a resident of the State of Idaho and was a Faculty Instructor in the Nursing Program during all relevant times described in the Complaint. Smout is sued in his individual capacity, in his official capacity, and as an agent for CEI.

23. Each of the individuals listed above are "persons" as that term is defined under 42 U.S.C. § 1983 for the specific remedy sought, including prospective injunctive relief as against

individuals in their professional capacity and compensatory and general damages against individuals.

## FACTS

24.    Plaintiff realleges and incorporates paragraphs 1 through 23 as through fully set forth herein.

25.    Plaintiff was a student at CEI in Idaho Falls in the Nursing Program. He was a good student and performed well in his classes. Plaintiff had completed three of his four semesters without incident.

26.    Plaintiff was elected by his peers to be both his class president and student body representative and class president.  In that role, Plaintiff addressed student concerns with professors and administrators.

27.    Nursing students, faculty, and administrators within the Nursing Program, are expected to comply with the Nursing Student Policy and Procedures Handbook.

28.    Plaintiff suffers from disabilities arising out of his past employment as a firefighter aka "hot shot," as well as other events.  Plaintiff sought to become a nurse and work in a burn unit due to the death of several of his co-workers caused by a fire.

29.    Plaintiff's disabilities can affect his ability to concentrate and focus, especially when his disabilities are exacerbated by other events. However, Plaintiff has always managed the impact of his disabilities in order to work and succeed as a student.

30.    On or about December 9, 2020, Plaintiff spoke with Reading, Dean of Healthcare and Human Services at CEI, in his office.

31.    Plaintiff had been feeling tremendous stress caused by his final exams, his workload, his student government responsibilities, and his responsibilities at home.

32.     All these circumstances exacerbated his disabilities.

33.     Since enrolling at CEI, Plaintiff had been in counseling with Dawn Cureton who oversaw CEI's counseling department and managed the other counselors, including Hailey Holland.

34.     During his meeting with Reading, Plaintiff told him he was feeling a lot of stress and anxiety over finals and everything else going on his life.

35.     Reading suggested Plaintiff meet with the on-campus counselor. Plaintiff agreed and arranged a meeting at Reading's direction.

36.     Within a few hours, Plaintiff was in Holland's office, since Cureton was not available to address the acute symptoms he was experiencing resulting from his disabilities and the substantial limitations caused by them.

37.     Both Holland and Cureton worked in CEI Counselor's office. Plaintiff was assured of confidentiality and that nothing would be released without his authorization except for limited exceptions, one of which included if he posed an "imminent threat."

38.     Plaintiff told Holland he was at times feeling suicidal and that faculty member, Jodene Trimble ("Trimble"), was an additional source of stress and recounted an episode when he felt she unfairly gave him a zero on an exam. Plaintiff was taking the exam at the CEI testing center when CEI's system went down.  None of the students there, including Plaintiff, could take their tests.  The proctor monitoring the testing center assured the students they would get an opportunity to take their tests.  Trimble, however, gave Plaintiff a zero on the test because he did not immediately email her about the situation even though the failure of CEI's system and Plaintiff's attendance could be verified.

39.     Plaintiff's main source of frustration was that he was never given the opportunity to discuss the matter with Trimble to explain the circumstances surrounding the exam. The lack of an

opportunity to address situations like this and an overall unwillingness by the faculty in general to discuss matters important to the students' success was an ongoing source of frustration and stress for Plaintiff and other students.

40.     In addition, Trimble asked Plaintiff's employer if he was saying negative comments about CEI's Nursing Program. Plaintiff felt targeted and disliked by Trimble because Plaintiff was willing to raise student complaints and concerns.

41.     Holland asked if Plaintiff currently had thoughts of violence.  Plaintiff said "no," but that he had felt them earlier and had worked through them.

42.     Holland asked Plaintiff if he had a plan to carry out any violence. Plaintiff denied having any plan to carry out any violence.

43.     Plaintiff has a history of struggling with disabilities which prompts at times negative thoughts toward himself.

44.     Holland posed a hypothetical and asked if he were to do something, how would he do it.

45.     Not knowing exactly what Holland meant by her hypothetical and thinking of violence only toward himself, Plaintiff responded that if he were to do something, he would probably use a gun. Plaintiff acknowledged that he did own guns, which is very common in southeastern Idaho.

46.     Plaintiff repeatedly denied having any plan or intent to hurt himself or others.

47.     The session ended soon after and Plaintiff left and went home. Holland never expressed any concern to Plaintiff that he posed a threat, that he needed additional help, or she needed to report any concerns.

48.     After Plaintiff left her office, Holland called Cureton and told her she thought Plaintiff posed a threat. Cureton told her that she (Cureton) could not make that determination because she was not there.

49.     Holland then breached confidentiality and called Trimble, CEI Vice President Barber, and Walker to tell them that Plaintiff posed a threat but that he did not have a plan to carry out any threat.

50.     After speaking with Holland, Barber called Reading and Rick Aman, President of CEI, to relay what Holland had told her and to secure the campus, although Holland admitted Plaintiff had no intention of hurting anyone, including himself.

51.     Barber then called Holland back and asked if Plaintiff was still on campus. Holland said she did not think so. Holland reiterated her alleged duties under "Tarasoff law" and again said Plaintiff did not have a plan to carry out a threat.

52.     Only after telling numerous CEI employees the false allegations about Plaintiff did Holland call Plaintiff to tell him she intended to report although she had already done so.

53.     Understandably, Plaintiff was upset. He had no intention of harming anyone, including himself, and sought counseling for the sole purpose of venting his frustration. Plaintiff felt lied to about the confidentiality of counseling.

54.     On or about December 10, 2020, Plaintiff was at home when he heard a knock at the door. He opened it and saw two uniformed police officers who said they were there to conduct a wellness check. Barber or another CEI employee had apparently called the police to determine whether he should be arrested. One of the officers, Sergeant Morgan concluded there "were no imminent danger issues" after Plaintiff explained the situation and assured him and the other officer, Officer Lyke, that he had no intention of hurting himself or

others. Officer Lyke drew the same conclusion in his report from the same date. In his report, he wrote, "There did not appear to be any indication [John Doe] had any intention to harm himself or anyone else during our conversation."

55.    While the two officers were there, a third officer entered the house uninvited, sat on the couch and proceeded to threaten Plaintiff, telling him he could be incarcerated in an apparent attempt to elicit any potential aggression from Plaintiff.

56.    All the officers determined Plaintiff did not pose a threat to himself or others, so all three left without making any arrest or taking him into custody.

57.    Later that afternoon, Plaintiff received an email from Walker, the Dean of Student Affairs at CEI, informing him he was barred from campus until January 4, 2021, while they investigated the matter.

58.    That evening Plaintiff went to work in Idaho Falls as usual. While at work at the hospital, two other uniformed officers served a temporary civil protection order on Plaintiff, which initiated a lot of questions with Plaintiff's employer and coworkers and created a huge traumatic ripple effect in his life.

59.    Later that evening, Plaintiff emailed Walker, expressing frustration over how the statements he made during a private, confidential counseling session were being used against him especially when he had no intention of hurting himself or anyone else and told Holland that.

60.    Walker responded via email saying he had reviewed "the record" and believed Plaintiff should check himself into the Behavioral Health Clinic.  Plaintiff was shocked that Walker had apparently accessed his counseling records and would make such a biased statement to him.

61.   On December 11, 2020, Plaintiff received an email from Rebecca Killion ("Killion"), inviting Plaintiff, Reading, and Kathleen Nelson to a Zoom meeting on December 14, 2020. The email contained no further information.

62.   Plaintiff emailed Reading the next day to inform him he wanted legal counsel present. Plaintiff did not feel safe speaking with them alone after being approached by the police on two separate occasions and having his words twisted. No one at CEI made any further attempt to speak with Plaintiff to discover what he said during the counseling session or the status of what his mental or emotional state was. CEI also did not respond to Plaintiff's statement about wanting legal counsel and made no further attempt to speak with him.

63.   Instead, on December 14, 2020, the day the Zoom meeting was to take place, Nelson, the Director of the Nursing Program, drafted a letter of dismissal.

64.   On December 21, 2020, Plaintiff received Nelson's letter via email dismissing him from the program.

65.   Plaintiff had only one more semester left in order to complete his nursing degree.

66.   On December 22, 2022, Plaintiff appeared in Bonneville County magistrate court for a hearing on the civil protection order initiated by Trimble.

67.   After reviewing the evidence, including the testimony and argument presented at the hearing, the magistrate judge dismissed the order of civil protection.

68.   On December 23, 2020, Plaintiff submitted to CEI a notice of appeal of his expulsion or dismissal based on the false allegations that he posed a threat, let alone an imminent threat. After seeing the objections, Nelson amended her letter to assert new allegations.

69.   On January 5, 2021, CEI held a hearing on Plaintiff's appeal of the dismissal.

70. Plaintiff had a protected property interest in his professional educational pursuit and interest in obtaining his degree. Further, Plaintiff had a liberty interest in his future profession as a nurse, and his good name, reputation, honor, or integrity. Defendant's actions put his due process and liberty interests at stake.

71. Pursuant to CEI's policy at the time, presumably adopted by the Trustees, Plaintiff was allowed to be represented by legal counsel who could argue on his behalf, cross examine witnesses, present witnesses, and submit other evidence to support Plaintiff's claim that the allegations were false.

72. During the hearing, Nelson made unfounded derogatory statements about Plaintiff based on nothing more than her perceived notion and stereotypes of Plaintiff's disabilities. She openly stated that no person suffering from depression should be allowed to be a nurse because they are dangerous.

73. During the hearing, Plaintiff, through his legal counsel, raised concerns that the expulsion decision was discriminatory, a violation of the ADA and/or the Rehabilitation Act, based on false allegations, which had been confirmed by the police and court, and would cause Plaintiff serious harm by the loss of his chosen profession as a nurse or reputation.

74. Plaintiff also submitted numerous letters of recommendation to illustrate his good name and character.

75. After a period of deliberation, appeals committee decided to overturn Nelson's decision to expel Plaintiff.

76. At the time, Plaintiff had one semester left before graduation during which he would spend nearly all of his time in clinical rotations away from campus.

77.     In spite of overturning the decision, Defendants placed restrictions on Plaintiff's re-
        enrollment, including barring him from campus without an escort and requiring him to
        continue counseling with Cureton. Defendants also warned Plaintiff that any violation of
        policy in the student handbook would result in immediate dismissal.

78.     To prepare for his clinical rotations, Plaintiff specifically stated on a clinical form
        pertaining to the three five-week rotations for his final semester that he did not have reliable
        transportation and could not travel far for clinicals.

79.     Before he was expelled in December, Plaintiff reached out to his supervisors where he
        worked in the nursing department to set up clinical rotations for the next semester at that
        hospital. Because he had been working there and was performing well, they were happy to
        let him do his rotations there.

80.     However, when Plaintiff told Reading that he had arranged to do his clinical rotations at
        his current employer, Reading informed him that Barber had decided Plaintiff would not
        be allowed to do his rotations there because she wanted him further away from CEI's
        campus.

81.     On the first day of class after being allowed to continue at CEI, the Clinical Coordinator,
        Nielson, one of the members of the appeal committee for Plaintiff's hearing, told Plaintiff
        she did not support the decision to let Plaintiff back into the Program.

82.     Based on Nielson's openly biased statement, Plaintiff was extremely worried about being
        allowed to complete his degree.

83.     As part of his clinical rotations, Plaintiff was assigned a Preceptor, a person jointly selected
        by the hospital and CEI to meet required written criteria.

84. CEI's policies stated that it agreed to select Preceptors based on their experience, clinical competence, positive attitude, willingness to teach, and communication skills.

85. Both Plaintiff and his Preceptor for each rotation were required to sign the Preceptor Program Manual, prepared by CEI, to set forth the expectations of both Preceptor and student.

86. According to the Preceptor Program Manual, the Clinical Coordinator, Nielson, was to ensure the Preceptor was familiar with and signed the Preceptor Program Manual and to ensure the Preceptor met expected performance objectives.

87. Plaintiff began the first of three five-week rotations at Portneuf Medical Center in Pocatello in January 2021. Because Plaintiff did not have reliable transportation, he was forced to use retirement money to purchase a newer vehicle.

88. Plaintiff had been working as a nurse apprentice for an extended period of time, including throughout his schooling at CEI, so the work he was doing during the rotation at Portneuf was familiar to him and went well. Plaintiff received nothing but "excellent" reviews and very favorable comments from his Preceptor.

89. In fact, his Preceptor wrote, "[John Doe] has gone above and beyond to integrate himself into our unit. His constant dedication to learn and improve has molded him into the perfect hirable candidate for any facility."

90. Plaintiff's second five-week rotation was to be at Bingham Memorial Hospital in Blackfoot. The orientation for that rotation was set for February 10, 2021. However, Plaintiff learned later that he should also have received credit for his hours at EIRMC as a nurse apprentice.

91. Plaintiff inadvertently missed the orientation at Bingham Memorial Hospital. Due to a heavy workload because of COVID-19, Plaintiff was coming off a 12-hour shift the night before at EIRMC and had slept four hours in the previous 37 hours. He had an exam to prepare for as well and had to coordinate going on campus with Reading because of Defendants' restriction that he be escorted at all times while on campus.

92. As soon as he realized his inadvertent mistake, Plaintiff notified his clinical instructor right away, asking for direction on how to remedy the situation. Plaintiff was willing to do whatever was necessary to rectify the situation.

93. Initially, Plaintiff was told to go ahead and start the rotation.

94. Within a few days, Reading emailed Plaintiff, informing him he could not begin the rotation without orientation, and that CEI would provide no additional opportunity to do orientation.

95. On February 19, 2021, Reading informed Plaintiff he was being dismissed from the Nursing Program, for a second time. Plaintiff was given no opportunity for appeal.

96. In December 2021, Plaintiff's legal counsel reached out to CEI's legal counsel to see if there was a solution so that Plaintiff could salvage his education and degree. Plaintiff had a limited time to complete the Program and needed to finish it during the upcoming semester.

97. In January 2022, Plaintiff was allowed to register to complete his final semester, again, but had to jump through numerous hoops in a very short period of time in which to meet the qualifications. Plaintiff was given a different faculty member outside the Nursing Program, with whom to work, and was told he had to complete the entire clinical rotations over, in spite of his successful rotation at Portneuf and his work as an apprentice.

98.     However, Plaintiff still could not be on campus without an escort.  As a result, Plaintiff could not attend a job fair on campus.

99.     For his first clinical rotation, CEI asserted it assigned Plaintiff and another student to the same Preceptor. However, CEI was able to quickly find another Preceptor to oversee Plaintiff.

100.    Plaintiff's second attempt at his clinical rotations was going very well, just as it had the first time.  He had excellent reviews.

101.    Plaintiff was on his last rotation and was finishing the last couple of weeks of his clinical rotation in wound care at Mountain View Hospital, even though he had sufficient accrued hours working as a nurse apprentice to qualify him for completion of the Program in addition to his clinical hours from his time at Portneuf Medical Center previously.

102.    Because Plaintiff was so close to completing his degree, during his last clinical rotation in wound care, he interviewed for a nursing position and was given an offer for his dream job of working in a burn unit, which he accepted.  In addition, Plaintiff had signed up and paid the fee to take his nursing boards.

103.    After the first week in wound care, Plaintiff's Preceptor took vacation. Plaintiff was directed to work with another nurse. Unbeknownst to Plaintiff, the other nurse was not aware of the requirements of a Preceptor and had never signed or reviewed the Preceptor Program Manual, as required.

104.    Plaintiff's actual Preceptor signed the Preceptor Program Manual, as did Plaintiff.

105.    The nurse filling in for Plaintiff's Preceptor seemed annoyed that she had to supervise a student.  When Plaintiff introduced himself and said where he lived, she stated, "Why would you live there?"

106.    The fill-in nurse rarely spoke to Plaintiff.  As he had in every other week of his clinical rotation, Plaintiff tried to go above and beyond to help the staff and support their patients. His actual Preceptor had allowed Plaintiff to roam a bit within the unit to be able to observe and help where he could.

107.    Plaintiff's Preceptor told him she would be submitting his first week review but would not be putting any comments in the section because she was short on time.  She assessed Plaintiff with mostly "goods" with one "excellent" and one "average."  CEI listed the fill-in nurse on Plaintiff's review sheet, but his actual Preceptor told him she was doing his evaluation.

108.    After working with Plaintiff for approximately two and a half days, unbeknownst to him, the fill-in nurse expressed concerns about him.  Nielson, the same person who wanted Plaintiff out of the Program, learned of the concerns and she and Chris Smout ("Smout") spoke to the fill-in nurse and her supervisor without ever discussing the issues with Plaintiff.

109.    Nielson told Barber of the concerns and instead of speaking to Plaintiff and helping him and the fill-in nurse work out any concerns, Plaintiff was directed to leave for the day. Plaintiff did not learn until days later that the fill-in nurse simply wanted him to never be alone with a patient without her there—a situation that could have easily been resolved with some clear communication with either help from his faculty or by the fill-in nurse.

110.    Plaintiff did not understand why he had been sent home. On April 5, 2022, Plaintiff notified by email his assigned instructor that he had been sent home and did not understand why. However, he wanted to ensure the situation was worked out or that he could be reassigned to another department or find some alternative to finish out his clinical rotation.

111.   CEI immediately responded that there was not another clinical spot or opening for him even though he was so near to completing his degree.

112.   Plaintiff's actual Preceptor expected him to do CNA duties, which Plaintiff was happy to do in order to be helpful. For example, his Preceptor directed him to take photos of wounds and showed him how to use the iPad to take the photos, including the password, which was a task the CNA's did.

113.   According to the Nursing Student Policy and Procedure Handbook, if an allegation is made, the student is to be provided an opportunity to respond, as follows:

> [t]he faculty member making the allegation of the violation will meet with the student to discuss the incident within three or less working business days except in extenuating circumstances. The faculty member will inform the Nursing Administrator of the occurrence as soon as possible and may require the student to fill out a success contract or student warning and plan for improvement. **The student has the opportunity to provide his or her explanation of the situation.**
>
> ***
>
> The Nurse Administrator may request a meeting with the student following the initial meeting with faculty.  The nurse administrator may, if he or she deems it necessary and in their full discretion, call a Code Resolution Meeting as outline in the student code of conduct…."

114.   Instead of ever speaking to Plaintiff as required, his faculty member, Smout and Nielson, prepared a complaint and recommended that Plaintiff be expelled from the Program.  The Nurse Administrator was Trimble, the person Plaintiff was falsely accused of being a threat toward.

115.   Consequently, Plaintiff never got a chance to speak to the fill-in nurse, his Preceptor, Smout, the Clinical Coordinator, or the Nurse Administrator to explain the situation from his perspective and resolve the concern. Plaintiff did not understand the fill-in nurse's expectations to never stay alone with a patient and would have happily complied. In fact,

Plaintiff did not know what the allegations were until after Smout and Nielson had made the decision to, once again, expel him from the Nursing Program.

116.   Walker, in place of Trimble, initiated a "Code Resolution Meeting" instead of seeking a lesser resolution of the concerns.

117.   However, Defendants, presumably through the Trustees, revised their appeal process since Plaintiff's last appeal.

118.   Pursuant to the new Code Resolution Meeting, Defendants removed all procedural due process protections:

   a.   Plaintiff could bring a support person, including legal counsel, but they were not allowed to speak;

   b.   CEI's attorney, on the other hand, could and did speak, and asked Plaintiff at least one question;

   c.   The actual complainant, the fill-in nurse, provided no testimony;

   d.   CEI's only witness was Smout who presented the fill-in nurse's statement of alleged events, including hearsay from others without written statements;

   e.   Smout proceeded with the complaint without ever asking Plaintiff his side of the story, providing Plaintiff no informal discussion prior to the hearing;

   f.   No testimony was under oath;

   g.   CEI did not obtain any statements from his actual Preceptor or any of his other assigned Preceptors, knowing Plaintiff had no contact information for them; and

   h.   Plaintiff had no opportunity to cross examine anyone, which also would have been impossible considering there was no testimony from anyone with actual knowledge.

119.    Coming as no surprise, Walker, the same person who suggested Plaintiff check himself into the Behavioral Health Center, agreed with the expulsion from the Nursing Program on April 22, 2022.

120.    Plaintiff appealed to the Appeal Review Committee Board on or about April 28, 2022. Again, Plaintiff was restricted and limited in what he could present and who could speak based on CEI's policies, presumably as adopted by the Trustees. The Appeal Review Committee Board disagreed with the expulsion from the Nursing Program and eliminated that penalty.  However, Plaintiff would have to reapply to take the same class for the third time after six months had passed.

121.    In order to exhaust his appeal right, Plaintiff submitted a discretionary appeal on May 27, 2022, to the person assigned by CEI, President Aman acting on behalf of Barber.  However, Aman also had been told the false allegations about Plaintiff being a threat.

122.    Plaintiff provided a copy of his appeal to CEI's legal counsel.

123.    Unbeknownst to Plaintiff, Smout also appealed but failed to provide a copy to Plaintiff's legal counsel.

124.    On June 21, 2022, nearly a month later, Aman reinstated the expulsion of Plaintiff from the Nursing Program. Plaintiff lost his offer of employment because CEI refused to allow him to graduate.

125.    Plaintiff has exhausted any administrative remedies available to him.

## COUNT I
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT/ AMERICANS WITH DISABILITIES ACT
### (Disability Discrimination)

126. Plaintiff realleges and incorporates paragraphs 1 through 125 as though fully set forth herein.

127. At all relevant times, Plaintiff was disabled within the meaning of the Rehabilitation Act and the ADA.

128. At all relevant times Plaintiff was "otherwise qualified" to remain a student at CEI, inasmuch as he met the academic and technical standards requisite for admission or participation in the school's Nursing Program, with or without reasonable accommodation.

129. Plaintiff was either excluded from participation in or denied the benefits of CEI's services, programs or activities, or was otherwise discriminated against by CEI.

130. Plaintiff was dismissed and/or prohibited from returning to the Nursing Program because of his disabilities and/or perceived notion and stereotypes of his disabilities or perceived disabilities.

131. CEI failed to provide meaningful access or reasonable accommodation to Plaintiff.

132. As a direct and proximate result of CEI's actions and/or failure to act, Plaintiff has suffered and will continue to suffer emotional distress.

133. As a direct and proximate result of CEI's actions and/or failure to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

134. Plaintiff is entitled to general and compensatory damages in an amount to be proven at trial, as well as any other equitable remedies available to him.

**COUNT II**
**VIOLATION OF SECTION 504 OF THE REHABILITATION**
**ACT/ AMERICANS WITH DISABILITIES ACT**
**(Discrimination/Retaliation)**

135.    Plaintiff realleges and incorporates paragraphs 1 through 134 as though fully set forth herein.

136.    Plaintiff was capable of completing his clinical rotations required for graduation and made prior arrangements with his supervisors at his hospital employer to do his rotations there since he was already working there and had unreliable transportation.

137.    Due to his disabilities, Plaintiff needed the accommodation of working with those who already knew him and knew of his good work in order to lesson Plaintiff's anxiety and stress.

138.    Instead of accommodating Plaintiff and allowing him to do his rotations at his current employer, CEI retaliated against him and/or discriminated against him by requiring him to travel to hospitals farther away from campus for his clinical rotations because of CEI's perceived notions of his disability.

139.    CEI also retaliated against or discriminated against Plaintiff by restricting his right to be on campus.

140.    CEI's actions in forcing Plaintiff to travel contributed to him missing the orientation at Bingham Memorial Hospital.

141.    Plaintiff could have completed the orientation another day or started the rotation since he was familiar with the process and had been working as a nurse apprentice.

142.    Instead of allowing Plaintiff an opportunity to complete his training, CEI abruptly and without reasonable justification dismissed him from the Program.

143.    The animosity of several faculty and administrators at CEI toward Plaintiff because of perceived notions and stereotypes of his disabilities was well-known.

144.    Despite being required to allow Plaintiff to return to school in January 2021 after he was successful in his appeal, and again in January 2022, CEI retaliated against or discriminated against Plaintiff twice at the first available opportunity by again expelling him from the Program.

145.    Plaintiff has been unable to escape the discriminatory bias towards him because the same actors have engaged in a continuing action to see him dismissed from the Nursing Program.

146.    As a result of CEI's retaliatory or discriminatory actions in immediately dismissing him without an opportunity to complete the Program or appeal the decision, and/or requiring him to again take the same class, Plaintiff has suffered extreme emotional distress.

147.    Further, CEI retaliated or discriminated against Plaintiff by failing to obtain his side of the story when allegations arose, jumping at the chance to again expel him from the Nursing Program.

148.    In addition, CEI put Plaintiff in a position where no other school will allow him to continue his training to become a nurse.

149.    As a direct and proximate result of CEI's actions and/or failure to act, Plaintiff has suffered and will continue to suffer loss of earnings, benefits, and job opportunities, as well as emotional distress.

150.    Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to him.

**COUNT III**
**VIOLATION OF 42 U.S.C. § 1983**
**(Fourteenth Amendment Due Process)**

151.    Plaintiff realleges and incorporates paragraphs 1 through 150 as though fully set forth herein.

152.   The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty or property, without due process of law."

153.   It is well established that Fourteenth Amendment due process protections are required in higher education disciplinary hearings.

154.   A person who has been admitted to a municipal community college has a protected property interest in continuing his education at that school until he has completed his course of study.  The state cannot deprive a person of this interest without due process.

155.   As a result, if Plaintiff as a CEI student faces disciplinary action that included the possibility of suspension or expulsion, then the due process provision of the Fourteenth Amendment to the United States Constitution applied to the disciplinary process that CEI used.

156.   In this case, the individual Defendants are state actors subject to the Fourteenth Amendment.

157.   A person has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived without due process.

158.   A person has a protected property interest in pursuing his education, as well as in future educational and employment opportunities and occupational liberty, of which he cannot be deprived without due process.

159.   Plaintiff's Constitutionally protected property interest in his continued enrollment at CEI and his right to complete his degree at CEI was violated by Defendants' actions.

160.   Plaintiff had a Constitutional right to be free from reputational damage without due process.

161.   Plaintiff had a Constitutional right to be free from arbitrary suspension, dismissal, or restriction on his ability to enter campus.

162.   Plaintiff's Constitutionally protected property interest in his right to continued enrollment at CEI also rises from the policies, course of conduct, practices, and understandings established by CEI.

163.   Plaintiff's Constitutionally protected property interest further arises from the express and implied contractual relationship between CEI and Plaintiff, including the Nursing Program and counseling center.

164.   Defendants acted under color of law when Holland breached her fiduciary duty and duty of confidentiality to Plaintiff, causing Plaintiff severe reputational damage.   Further, Defendants further violated Plaintiff's rights by spreading the information and acting when there was no imminent threat.

165.   Defendants acted under color of law in dismissing Plaintiff from the Nursing Program in December 2020.

166.   Holland deprived Plaintiff of his Constitutional right of due process by asserting he was a threat to Trimble when she knew there was no imminent threat, knew that Plaintiff was venting in a confidential counseling session, Holland failed to discuss her concerns with Plaintiff, and knew that Plaintiff would suffer severe consequences.

167.   Defendants deprived Plaintiff of his Constitutional right of due process by dismissing Plaintiff from the Nursing Program without investigation or consideration of evidence that supported that Plaintiff was not a threat to himself or others and failing to even discuss the situation with Plaintiff after he requested legal counsel.

168.   Although Defendants' decision was overturned, Defendants placed unreasonable restrictions on Plaintiff without evidence to support the restrictions, which made Plaintiff's ability to complete his schooling far more difficult and created additional hurdles for Plaintiff which were not applied to other nursing students, which were supported by Nelson and/or Barber.

169.   The conditions imposed, including restricting his access to campus, were damaging to his reputation, and his interest in completing his education and chosen profession.

170.   As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has suffered and will continue to suffer emotional distress.

171.   As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

172.   Plaintiff is entitled to general and compensatory damages in an amount to be proven at trial, as well as any other equitable remedies available to him.

173.   Defendants' conduct was willful or done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT IV
## VIOLATION OF 42 U.S.C. § 1983
### (Freedom of Movement)

174.   Plaintiff realleges and incorporates paragraphs 1 through 173 as though fully set forth herein.

175.    Defendants acted under color of law in restricting Plaintiff's ability to access campus and
without supervision to be in certain areas near campus.

176.    Defendants deprived Plaintiff of his Constitutional right of freedom of movement by
restricting his ability to be on campus and/or near campus to complete his degree without
evidence to support the allegations.

177.    As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has
suffered and will continue to suffer emotional distress.

178.    As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has
suffered and will continue to suffer a loss of earnings and other employment benefits and
job opportunities.

179.    Plaintiff is entitled to general and compensatory damages in an amount to be proven at
trial, as well as any other equitable remedies available to him.

180.    Defendants' conduct was willful or done with reckless disregard for Plaintiff's federally
protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C.
§ 1981a(a).

### COUNT V
### VIOLATION OF 42 U.S.C. § 1983
### (First Amendment)

181.    Plaintiff realleges and incorporates paragraphs 1 through 180 as though fully set forth
herein.

182.    Plaintiff exercised his First Amendment right to free speech when he expressed his
frustration with faculty within the Nursing Program and their refusal to consider input and
complaints from himself and other students, including but not limited to Trimble.

183.   Because CEI is a public entity, issues relating to concerns about faculty and student complaints are issues of public concern.

184.   Defendants retaliated against Plaintiff after they learned of his frustrations and reports against Trimble, along with his ongoing reports of complaints from other students.

185.   Defendants' actions in dismissing Plaintiff from school would prevent or chill another student from engaging in free speech, including criticizing the department or faculty.

186.   Even after a hearing that failed to confirm the false allegations against Plaintiff, Defendants still placed restrictions and limitations on Plaintiff's ability to attend and participate fully in school.

187.   Plaintiff's free speech was a substantial or motivating factor in Defendants' actions.

188.   As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has suffered and will continue to suffer emotional distress.

189.   As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

190.   Plaintiff is entitled to general and compensatory damages in an amount to be proven at trial, as well as any other equitable remedies available to him.

191.   Defendants' conduct was willful or done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

**COUNT VI**
**VIOLATION OF 42 U.S.C. § 1983**
**(Fourteenth Amendment Due Process)**

192.    Plaintiff realleges and incorporates paragraphs 1 through 191 as though fully set forth herein.

193.    Reading acted under color of law in his position as Dean of Healthcare and Human Services at CEI.

194.    Defendants deprived Plaintiff of his Constitutional right of procedural due process when they dismissed Plaintiff from the Nursing Program with no appeal rights after Plaintiff was successful in contesting his first dismissal.

195.    As a result of Defendants' retaliatory actions in immediately dismissing him without an opportunity to complete the program or appeal the decision, Plaintiff has suffered extreme emotional distress.

196.    As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has suffered and will continue to suffer loss of earnings, benefits, and job opportunities as well as emotional distress.

197.    Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to him.

198.    Defendants' conduct was willful or done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT VII
## VIOLATION OF 42 U.S.C. § 1983
### (Fourteenth Amendment Due Process)

199.    Plaintiff realleges and incorporates paragraphs 1 through 198 as though fully set forth herein.

200.   Defendants acted under color of law in their positions at CEI.

201.   CEI and Trustees amended CEI's policies to provide no due process protections.  The appeal process is unconstitutional on its face.

202.   In applying CEI's unconstitutional policy, Defendants deprived Plaintiff of his right of due process when, at a minimum, they failed to give Plaintiff an opportunity to discuss the allegations prior to any decisions being made, an opportunity to resolve the dispute within the wound care unit, be represented in a meaningful way by legal counsel, have testimony submitted under oath, have an opportunity to confront the actual complainant, have an opportunity to cross examine, or ask questions or have argument made on his behalf prior to being dismissed from the Nursing Program.

203.   Defendants knew the fill-in nurse had not entered into the Preceptor agreement with CEI and had not read or agreed to the Preceptor Handbook.

204.   Defendants failed to obtain evidence from Plaintiff's actual Preceptor or obtain statements from his previous Preceptors.

205.   Defendants also knew that Plaintiff did not have contact information for the nurses with whom he had worked, and that Plaintiff had been previously reprimanded for contacting Bingham Memorial Hospital on his own.

206.   As a result of Defendants' actions, Plaintiff has suffered extreme emotional distress.

207.   As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has suffered and will continue to suffer loss of earnings, benefits, and job opportunities as well as emotional distress. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to him.

208.   Defendants' conduct was willful or done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT VIII
## VIOLATION OF 42 U.S.C. § 1983
### (Fourteenth Amendment Due Process – Biased Decisionmakers)

209.   Plaintiff realleges and incorporates paragraphs 1 through 208 as though fully set forth herein.

210.   In spite of their involvement in the false allegations that Plaintiff posed a threat, CEI allowed biased Defendants to decide and determine Plaintiff's continuation in the Nursing Program under its unconstitutional disciplinary procedures.

211.   Defendants were acting under color of law when each participated in deciding whether Plaintiff would be expelled from the Nursing Program.

212.   Under the Fourteenth Amendment, Plaintiff was entitled to a fair and impartial decisionmaker.

213.   Due to comments made and their participation in past unsubstantiated allegations against Plaintiff, Defendants were not fair or impartial.

214.   As a result of Defendants' actions, Plaintiff has suffered extreme emotional distress.

215.   As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has suffered and will continue to suffer loss of earnings, benefits, and job opportunities as well as emotional distress. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to him.

216.   Defendants' conduct was willful or done with reckless disregard for Plaintiff's federally

protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C.

§ 1981a(a).

**COUNT IX**
**VIOLATION OF 42 U.S.C. § 1983**
**(Substantive Due Process)**

217.   Plaintiff realleges and incorporates paragraphs 1 through 216 as though fully set forth

herein.

218.   Plaintiff had a Constitutional right to work in his chosen profession of nursing.

219.   Defendants' actions in dismissing him from the Nursing Program three times, once with a

little less than a semester of work to complete and the most recent with all or nearly all

requirements completed, unreasonably interfered with Plaintiff's liberty interest in his

educational pursuit and to eventually work as a registered nurse.

220.   In addition, Defendants put him in a position where no other school will allow him to

continue his training to become a nurse and he will have to start over from the beginning

if he decides to attend another school, which will result in additional expenses and lost

wages he could have earned as a nurse.

221.   In addition, based on the past actions, Defendants' will never allow Plaintiff to obtain a

nursing degree from CEI.

222.   As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has

suffered and will continue to suffer loss of earnings, benefits, and job opportunities as well

as emotional distress. Plaintiff is therefore entitled to general and compensatory damages,

in an amount to be proven at trial, as well as any other equitable remedies available to him.

223. Defendants' conduct was willful or done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT X
## ESTOPPEL AND RELIANCE

224. Plaintiff realleges and incorporates paragraphs 1 through 223 as though fully set forth herein.

225. CEI's various policies constitute representations and promised that CEI should have reasonably expected to induce action or forbearance by Plaintiff.

226. CEI expected or should have reasonably expected Plaintiff to accept its offer of admission, incur tuition and fee expenses, and choose not to attend other colleges, based on its express and implied promises that CEI would not deny Plaintiff his procedural right should he be accused of a violation of CEI's policies.

227. Plaintiff relied upon to his detriment on these express and implied promises and representations by CEI.

228. Based on the foregoing, CEI is liable to Plaintiff based on estoppel.

229. As a direct, reasonable, and foreseeable consequence of these breaches, Plaintiff sustained damage, including without limitation, emotional distress, economic injuries, the inability to complete his studies at CEI, and other general and compensatory damages.

230. As a result of the foregoing, Plaintiff is entitled to damage in an amount to be determined at trial.

## COUNT XI
## DECLARATORY JUDGMENT

231.   Plaintiff realleges and incorporates paragraphs 1 through 230 as though fully set forth herein.

232.   CEI has committed numerous violations of the Parties' contract and of federal and state law.

233.   Plaintiff's future has been severely compromised and damaged.  Without appropriate redress, the sanctions imposed as a result of Defendants' biased reports, investigations, and decisions will continue to cause irreversible damage to Plaintiff's educational, career, and future employment prospects, with no end in sight.

234.   As a result of the foregoing, there exists a justiciable controversy between the Parties with respect to the outcome, permanency, and future handling of Plaintiff's formal student record at CEI.

235.   By reason of the foregoing, Plaintiff requests, pursuant to 28 U.S.C. § 2201, a declaration that: (1) the outcome and findings made by Defendants be reversed; (2) Plaintiff's expulsion be reversed; (3) Plaintiff's reputation be restored; (4) Plaintiff's degree from the Nursing Program be issued; (5) all records related to the investigations of Plaintiff be destroyed; and (6) CEI's Code Resolution Meeting policy for allegations of serious misconduct be declared unconstitutional as written and applied.

## **ATTORNEY'S FEES**

236.   As a further direct and proximate result of Defendants' actions and/or failures to act, Plaintiff has been compelled to retain the services of counsel and has thereby incurred and will continue to incur costs and attorney's fees which Defendants should be required to pay pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a(b), 42 U.S.C. § 1988, and 28 U.S.C. § 2202.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

1.    For compensatory and general damages as well as statutorily available damages in an amount as shall be proven at trial, and any available equitable remedies;

2.    For punitive damages;

3.    For pre-judgment interest;

4.    For prospective relief as requested;

5.    For attorney's fees pursuant to statute and costs of suit; and

6.    For such other and further relief as the Court deems just and proper.


Dated this 22nd day of November 2022.

                               /s/_____
                               DeAnne Casperson
                               CASPERSON ULRICH DUSTIN PLLC